69 F.3d 549
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 Thomas E. WARREN, III, Petitioner,
v.
SECURITIES & EXCHANGE COMMISSION, Respondent.
 No. 94-9534.
 United States Court of Appeals, Tenth Circuit.
 Oct. 23, 1995.
 
 SEC
 AFFIRMED.
 Before ANDERSON, BALDOCK and BRORBY, Circuit Judges.
 ORDER AND JUDGMENT*
 BRORBY, Circuit Judge.
 
 
 1
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The cause is therefore ordered submitted without oral argument.
 
 
 2
 Mr. Warren, a pro se litigant, seeks review of an order of the Securities and Exchange Commission affirming an order of the National Association of Securities Dealers that fined Mr. Warren $5,000, suspended him for two weeks and required him to requalify within ninety days for various violations of the National Association of Securities Dealers' Rules of Fair Practice.
 
 
 3
 We first examine our jurisdiction. Mr. Warren's petition for review was filed in this court sixty-three days after the date of the entry of the order. The parties were requested to brief this apparent jurisdictional defect as the petition should have been filed within sixty days. Mr. Warren attempted to file his petition with the district court within the sixty-day period, and the district court refused to file the petition. This was error by the clerk of the district court. A district court clerk's duties are merely ministerial and not judicial. We review the action for an abuse of discretion. Had the clerk filed the petition, the district court could have transfered the appeal to this court under 28 U.S.C. Sec. 1631. We therefore conclude the clerk should have permitted the petition to be filed, and we accept jurisdiction.
 
 
 4
 * Mr. Warren seeks review, pursuant to Sec. 25(a)(1) of the Securities Exchange Act of an order of the Securities and Exchange Commission affirming disciplinary action taken against him by the National Association of Securities Dealer, Inc. After an independent review of the record, the Commission found that Mr. Warren, a registered representative of Shearson Lehman Brothers, Inc., opened new accounts in the names of four individuals he knew were children, signing new account forms that falsely described the children as adults and that he accepted orders for the accounts without proper authorization. The Commission found this conduct, which facilitated the misappropriation of funds from the children's accounts, violated various sections of the National Association of Securities Dealers' Rules of Fair Practice. The Commission further found that the sanction imposed by the National Association of Securities Dealers, a censure, a $5,000 fine, suspension for two weeks, and a requirement that he requalify as a registered representative by examination within ninety days, was neither excessive nor oppressive, and accordingly affirmed.
 
 
 5
 Mr. Warren, acting pro se, seeks review asserting: (1) "[f]ailure to investigate [sic] charges made by Shearson in a timely manner, or any manner denied due process"; and (2) "[t]he conduct of the hearing and the findings of fact were manifestly unfair and contrary to the evidence as to constitute a denial of due process."
 
 II
 
 6
 Concerning the failure to investigate, we quote from Mr. Warren's brief:
 
 
 7
 The record shows no interest by Shearson or NASD or SEC to evaluate the weight or assess the credibility of the evidence. I told the truth from the first day and everyone else has only been interested in saving their job or sacrificing me to justify a "self regulatory" position.
 
 
 8
 An examination of the record shows that at the hearing Mr. Warren admitted knowing the children were minors, admitted signing the new account forms, and admitted he bore responsibility for knowing who the new accounts were for. His primary defense was that others within Shearson were also aware of these facts. The other individuals specifically denied knowledge of these facts. The Business Conduct Committee therefore made a credibility determination adverse to Mr. Warren.
 
 
 9
 The Commission's factual findings must be upheld if they are supported by substantial evidence. We have reviewed the record. The factual findings in the case before us are supported by substantial evidence. Mr. Warren's own testimony, coupled with the testimony of his supervisor, adequately supports the findings.
 
 
 10
 Mr. Warren's remaining arguments relating to his first issue are not persuasive and warrant no further discussion.
 
 III
 
 11
 Mr. Warren next makes the bald assertion the "conduct of the hearing and the findings of fact were manifestly unfair and contrary to the evidence." Mr. Warren fails to support this argument with citations to the record and he fails to inform us as to any specific details. He gives us only argument.
 
 
 12
 Mr. Warren fails to understand the nature of this court's review. We cannot make credibility findings. We are not free to substitute our judgment for that of the Commission. We can only review the factual findings to determine if they are supported by substantial evidence. This we have done. We can review legal conclusions to determine if there are errors of law. Mr. Warren has provided us with no specific assertion of errors of law and has provided us with no citations to contrary law. We have reviewed the legal conclusions and can discern no error.
 
 
 13
 We AFFIRM the order of the Commission for substantially the same reasons set forth in the opinion of the Commission, a copy thereof being attached.
 
 ATTACHMENT
 SECURITIES AND EXCHANGE COMMISSION
 
 14
 Washington, D.C.
 
 SECURITIES EXCHANGE ACT OF 1934
 Rel. No. 33677/February 24, 1994
 Admin.Proc. File No. 3-7963
 
 15
 In the Matter of the Application of THOMAS E. WARREN, III
 
 2348 Columbia Place
 Tulsa, Oklahoma 74114
 
 16
 For Review of Disciplinary Action Taken by the NATIONAL ASSOCIATION OF SECURITIES DEALERS, INC.
 
 OPINION OF THE COMMISSION
 
 17
 REGISTERED SECURITIES ASSOCIATION--REVIEW OF DISCIPLINARY PROCEEDINGS
 
 Violations of Rules of Fair Practice
 
 18
 Conduct Inconsistent with Just and Equitable Principles of Trade
 
 
 19
 Failure to Record Complete and Accurate Account Information
 
 
 20
 Where registered representative of member firm of registered securities association opened new accounts for minors with false new account cards and accepted discretionary orders for the accounts without proper authorization, which facilitated misappropriation from these accounts to the detriment of the children and his employer, held, association's findings of violations sustained in part and set aside in part and sanctions it imposed modified.
 
 APPEARANCES:
 
 21
 Thomas E. Warren, III, pro se.
 
 
 22
 John J. Flood and Anne H. Wright, for the National Association of Securities Dealers, Inc.
 
 Appeal filed: January 25, 1993
 Last brief received: August 6, 1993
 I.
 
 23
 Thomas E. Warren, III, a registered representative formerly associated with Shearson Lehman Brothers, Inc. ("Shearson" or the "Firm"), a registered broker-dealer and member of the National Association of Securities Dealers, Inc. ("NASD"), appeals from NASD disciplinary action. The NASD found that Applicant violated Article III, Sections 1, 2, and 21 of the NASD's Rules of Fair Practice (the "Rules")[1] when, in opening several new accounts, he executed forms that contained false information, accepted discretionary instructions from a third party without proper authorization, and executed unsuitable transactions in these accounts. The NASD censured Applicant, fined him $5,000, suspended him in all capacities for two weeks, and required him to requalify within 90 days of the decision.[2] Our findings are based on an independent review of the record.
 
 II.
 
 24
 On or about January 14, 1986, Christianne Seger Whitehill asked Warren to open securities accounts for her four children at Shearson's Tulsa, Oklahoma branch office. Warren, who was a neighbor of the Whitehills and a close friend of Whitehill's brother, agreed.[3] Shearson's procedures required both that the new account card for an account maintained on behalf of a minor state that the account holder was below the age of majority and that the account be handled in accordance with Oklahoma's Uniform Gifts to Minors Act. Shearson's procedures also prohibited margin transactions in accounts established for minors.
 
 
 25
 Although Warren knew the Whitehill family and was aware that the Whitehill children were minors, Warren did not comply with Shearson's requirements.[4] Indeed, Warren signed new account cards that contained false information.[5] Among other things, the new account cards gave false dates of birth for each child. The children, whose ages in fact ranged from 5 to 15 years of age at the time, were described as being 7 to 12 years older. The new account cards also failed to state that the account holders were minors, designate a custodian, or state that the accounts were to be maintained in accordance with the Uniform Gifts to Minors Act.[6] Warren executed these inaccurate and incomplete new account cards and submitted them to the branch manager for approval.[7]
 
 
 26
 The day after the accounts were opened, Whitehill deposited into them stock certificates that her children had received from their great-grandmother. For reasons not explained in the record, the stock certificates had previously been registered directly in the names of the children without any designation of a custodian or guardian. On the basis of that fact, the holders of these stock certificates appeared to be adults. Because both the accounts and the stock certificates appeared to belong to adults, the accounts were approved for margin activity, although Shearson's procedures prohibited margin transactions in a minor's account.[8]
 
 
 27
 The same day, Warren, at Whitehill's request, sold some stock from each child's account.[9] Warren accepted Whitehill's order, although he knew that the accounts belonged to minors, and Whitehill was not listed as the children's designated custodian and had no documentation authorizing her to exercise discretionary authority in these accounts.[10] Four checks in the amount of $10,000 were issued by Shearson and delivered to Whitehill, one from each child's account.[11]
 
 
 28
 Activity continued in the children's accounts through December 17, 1987. Warren testified that, throughout this period, he was largely out of the office pursuing other business and that the support staff was supposed to oversee his retail clients' activities in his absence. During this period, apparently at Whitehill's request, securities were liquidated and checks were issued in the children's names.[12] Additional margin loans were also made using the stock in the accounts as collateral. By December 1987, a total of $446,720.72 had been withdrawn from the accounts, and the accounts had a total debit balance of $281,675.75 against total equity positions of $161,079.[13]
 
 III.
 
 29
 Applicant argues that he cannot be held liable because the operations manager at Shearson's Tulsa branch office was fully aware of the manner in which these accounts were being handled. In Warren's view, this awareness should relieve him of any responsibility in this matter.[14] Specifically, Applicant claims that the operations manager knew that these accounts belonged to minors but instructed Warren to open these accounts without that designation because the certificates were registered directly in the names of the children without designation of a custodian or guardian.[15]
 
 
 30
 We note that the stock certificates were not presented until the day after the accounts were opened. Moreover, the operations manager testified that she did not recall being told that these accounts belonged to minors or instructing Warren to handle these accounts in this manner. In addition, the operations manager stated that she did not have knowledge of any instance where new account cards were purposefully falsified in order to circumvent Shearson's procedures. Her testimony was bolstered by the branch manager's testimony that he was unaware of any situation where a minor's account was not handled in accordance with Shearson's procedures.
 
 
 31
 But, even assuming that the branch office failed properly to supervise these accounts, this fact would not exonerate Warren.[16] As the registered representative for these accounts, Warren had an obligation to assure that the information on the account cards was complete and correct and to see that these accounts were handled appropriately. Although Warren claims that the names on the accounts had to be the same as the names on the stock certificates, Warren should have refused to accept the stock certificates from Whitehill until they were properly registered. These obligations were not altered by any alleged failure on the part of his supervisors.[17]
 
 
 32
 Here, Warren admits that he knew these accounts were established for minors. He had met the children and knew their approximate ages. He had to know the ages on the new account cards were inaccurate. Furthermore, he knew that Whitehill had expressed a "dire" need for funds. Thereafter, he had to be aware, after reviewing monthly account activity statements, that the funds in these accounts were being depleted and that margin transactions were being effectuated in these accounts.
 
 
 33
 Warren's failure to ensure that complete and accurate information was reflected on the new account cards and to record and verify a proper custodian for these accounts circumvented Shearson's procedures, thereby facilitating Whitehill's misappropriation of these funds from the children's accounts.[18] This conduct clearly violated Article III, Sections 1 and 21 of the Rules.[19]
 
 IV.
 
 34
 Applicant asserts that the NASD's decision is unfair.[20] He argues that neither the NASD nor Shearson conducted an adequate investigation into this matter.[21] Applicant asserts that individuals involved in the daily operations of Shearson, who could assist in proving that Shearson knew that these accounts belonged to minors, were not interviewed by the NASD.[22]
 
 
 35
 We disagree with Applicant. We find that the NASD hearing was fair. The NASD met its evidentiary burden and also provided Applicant with a great deal of latitude at the hearing. For example, the NASD allowed Applicant to call to testify on the day of the hearing an individual who had not previously been named as a witness.[23] Applicant could have interviewed additional witnesses prior to the hearing or called additional witnesses to testify at the hearing, but he did not.[24] Applicant cannot now complain that his hearing was unfair because he did not pursue these issues.[25]
 
 V.
 
 36
 Applicant asserts that the sanctions against him are unjustified.[26] We disagree. If Warren had ensured that accurate and complete information was provided on the new account cards, required proper documentation of Whitehill's authority to execute transactions in these accounts, and more closely monitored these accounts, these accounts would not have been looted to the detriment of the Whitehill children and Warren's employer. We find that, although we have not sustained some findings, the sanctions are not excessive or oppressive,[27] in light of the public interest.[28]
 
 An appropriate order will issue.[29]
 
 37
 By the Commission (Chairman LEVITT and Commissioners ROBERTS, and BEESE). Commissioner SCHAPIRO not participating.
 
 
 38
 /s/ Jonathan G. Katz
 
 Jonathan G. Katz
 Secretary
 
 
 *
 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of the court's General Order filed November 29, 1993. 151 F.R.D. 470
 
 
 [1]
 Section 1 requires adherence to "high standards of commercial honor and just and equitable principles of trade." Section 2 provided, at the time of the events herein, that "[i]n recommending to a customer the purchase, sale or exchange of any security, a member shall have reasonable grounds for believing that the recommendation is suitable for such customer upon the basis of the facts, if any, disclosed by such customer as to his financial situation and needs." Section 21, among other things, at the time of the events herein, required that "[e]ach member shall maintain accounts of customers in such form and manner as to show the following information: name, address and whether the customer is legally of age, the signature of the registered representative introducing the account and the signature of the member or the partner, officer or manager accepting the account for the member. In discretionary accounts, the member shall also record the age or approximate age and occupation of the customer as well as the signature of each person authorized to exercise discretion in such account."
 
 
 [2]
 The NASD also assessed costs
 
 
 [3]
 All of the new account cards and client agreements are dated January 14, 1986, except for one client agreement which is dated January 9, 1986
 
 
 [4]
 Warren had previously established an account for his own child and should have been familiar with the procedures that govern such accounts
 
 
 [5]
 Warren testified that it was Shearson's procedure to have a sales-assistant fill out the new account cards. The registered representative would then review and sign the new account cards. Warren admitted, however, at the National Business Conduct Committee ("National Committee") hearing that he was responsible for the accuracy of the information on the new account cards
 
 
 [6]
 In addition, each of the four children, including a 5-year old, were listed on the new account cards as renting a residence and owning a bank account. In the space provided on the new account card for the account holder's employer, the children were each listed as students. There was also testimony that all four new account cards appeared to be signed by the same person, instead of the account holder
 
 
 [7]
 Warren disputes for the first time in this appeal that the new account cards admitted into evidence were signed by him. He argues that, while he signed new account forms for these accounts, the documents admitted into evidence are not the ones he signed. However, Warren expressly admitted signing these account cards at both the District Business Conduct Committee ("District Committee") hearing and the National Committee hearing. Warren consistently made this admission, while concurrently availing himself of his right to dispute the authenticity of his signatures on other documents (check requests) admitted into evidence. In light of Warren's repeated admissions, we do not find this belated assertion convincing
 
 
 [8]
 Applicant asserts that he did not open these accounts as margin accounts. This assertion, however, conflicts with his explanation of the initial transactions in the accounts. See n. 11 infra. At the time that these accounts were opened, adult accounts were eligible for margin transactions when the account holder signed the customer agreement. Shearson did not require that a separate margin agreement be completed and approved
 
 
 [9]
 Warren objects to the admission into evidence of the order tickets for these initial transactions because they were transmitted by the Shearson branch manager to the NASD during the District Committee hearing. Article II, Section 7(c) of the NASD Code of Procedure gives the hearing panel discretion to accept evidence during the hearing if it is relevant and necessary for a complete record. In this instance, we do not believe the hearing panel abused its discretion. There is nothing to suggest that the NASD was aware of the existence of these tickets before the hearing. Furthermore, Warren stated he wanted to see the order tickets and agreed to give them to the hearing panel for consideration
 
 
 [10]
 Warren asserts that he acted on Whitehill's instructions for these accounts because she assured him that proper documentation would be provided to allow her to direct the activities in these accounts. He also claims that he was subsequently assured by another Shearson employee that the proper documentation had been provided. No such documentation is in the record
 Warren, nonetheless, executed at least one transaction in each of these accounts at the request of the minors' mother, without any evidence of her authority. We find Applicant did not properly verify or record the mother's authority to do transactions in these accounts.
 
 
 [11]
 Warren asserts that he does not recall preparing the order tickets for these transactions. However, Warren admitted during the District Committee hearing that he wrote the order tickets and designated these accounts as margin accounts on the order tickets. He testified that he was directed to sell the shares through a margin account in order to allow the mother to obtain funds immediately. Apparently, under Shearson's procedures, funds could be withdrawn from a margin account immediately after the stock was deposited without any additional charges. If the account was designated a cash account, prior approval would be required to immediately withdraw funds and a penalty, as well as interest, would be charged on each withdrawal until the stock was fully liquidated
 
 
 [12]
 Warren asserts that someone else signed his name to the check requests for these accounts. Counsel for the NASD also acknowledged during the District Committee hearing that the signatures on these particular documents do not all appear to be the same as Warren's signature. Consequently, we have not relied on this evidence in support of our findings of violations
 
 
 [13]
 In a civil proceeding brought on behalf of the children by a guardian appointed during the parents' divorce proceedings, the guardian alleged that much of the money was spent on remodeling a house for the family. That proceeding was settled without any admission of liability. The terms of the settlement, in general, required the children's parents to contribute the equivalent of $275,000 in cash and property and Warren to contribute $12,500 in cash to a trust for the benefit of the children. Shearson absorbed $112,500 of the margin debt remaining in these accounts
 
 
 [14]
 Warren also asserts that the Tulsa branch manager was fully aware that the account holders were minors. However, at the District Committee hearing, the branch manager expressly disavowed any knowledge, at the time these accounts were opened, that the accounts belonged to minors. On cross examination, Warren did not attempt to impeach the branch manager's testimony on this issue, even after the NASD's counsel requested Warren to address any statements that the branch manager made that Warren had a "problem with" or thought were "contradictory." Warren indicated at the hearing that he agreed with the branch manager's testimony "whole-heartedly."
 
 
 [15]
 Warren also asserts that the Whitehill children visited the office on several occasions and that other employees saw them and had to know that they were minors
 
 
 [16]
 In one instance, one child was listed on the new account card as being within 3 months of his 18th birthday. On its face, this new account card should have prompted the firm to question the registered representative's failure to designate this account as a minor's account
 
 
 [17]
 See, e.g., Donald T. Sheldon, Securities Exchange Act Rel. No. 31475 (November 18, 1992), 52 SEC Docket 3826, 3871 at n. 130
 
 
 [18]
 On the record before us, the extent to which Warren was involved with the accounts once they were established is unclear. The record does not demonstrate that, once the accounts were opened and the initial trades effected, Warren was involved in the trading. In addition, it appears that Whitehill made requests to withdraw funds from the children's accounts in Warren's absence. Many of the check requests and check receipts do not appear to be signed by Warren, and some appear to have been written or signed directly by Whitehill. It also appears that Warren was unaware that the money being withdrawn from the children's accounts was not being used for their benefit. We therefore do not reach the issue of whether Warren aided and abetted Whitehill's misappropriation of her children's funds. We note that the NASD complaint generally alleged that Warren authorized false new account cards and accepted discretionary orders from Whitehill without proper authority, which aided and abetted Whitehill's misappropriation. As stated above, we find that the use of the false new account cards and the acceptance of Whitehill's orders without proper authorization are clearly inconsistent with just and equitable principles of trade and the NASD's books and records requirements. We believe Warren was on notice of the facts which constitute the basis of the charges against him and was able to present an adequate defense against them. The Commission has previously recognized that, even if an administrative pleading is defective, the defect can be remedied if the record demonstrates that the respondent understood the issue and was afforded a sufficient opportunity to justify his conduct with respect thereto. James L. Owsley, Securities Exchange Act Rel. No. 32491 (June 18, 1993), 54 SEC Docket 986, 991. See also Aloha Airlines, Inc. v. CAB, 598 F.2d 250, 261-262 (D.C.Cir.1979), and the authorities therein cited
 
 
 [19]
 We do not believe the suitability claims brought against the Applicant are supported by the record. There is no evidence that Warren recommended the transactions that were effected in these accounts. Rather, the record indicates that Whitehill initiated these transactions. The NASD contends that Warren should be held responsible for making unsuitable recommendations even if the children's mother originated the idea of effecting margin transactions in the accounts. The NASD cites John M. Reynolds, Securities Exchange Act Rel. No. 30036 (December 4, 1991), 50 SEC Docket 624, in support of this contention. We believe that the case at hand and Reynolds are distinguishable. In Reynolds, the registered representative literally controlled all of the activity in the account. Here, the minors' mother, allegedly on behalf of the children, exercised control in these accounts and initiated apparently unsolicited transactions on her own
 
 
 [20]
 Applicant also asserts that he was unable to defend himself because the charges stem from events that occurred 6 to 7 years ago. However, Applicant identifies no evidence that he could have obtained had the case been brought earlier and has not shown that he was prejudiced by this delay. Richard C. Spangler, Inc., 43 S.E.C. 1093, 1094 (1969) (dismissing allegation that delay in bringing complaint was detrimental where no showing of prejudice). Furthermore, these same facts were the subject of a civil suit that was filed in late 1989 and settled in April 1990. Warren also received a letter in January 1991 from the NASD requesting information concerning the children's accounts. Thus, the activities at issue have been repeatedly brought to Warren's and the witnesses' attention by these judicial and regulatory inquiries
 
 
 [21]
 Midway into the District Committee hearing, Applicant requested that the record remain open after the hearing to allow him further to investigate this matter. The NASD opposed this request. The District Committee concluded that the request was untimely and could be renewed, if still sought, after all the evidence is admitted. Applicant did not renew this request, even after the NASD's counsel remarked on its merits in his closing argument
 
 
 [22]
 Applicant also claims that he was at a disadvantage because he could not subpoena witnesses. The NASD rules do not provide for the use of a subpoena. Furthermore, Applicant has not specified what evidence he was deprived from obtaining, other than to speculate that additional evidence could have substantiated his claim that Shearson knew these accounts were opened for minors. As stated previously, even if Warren proved that Shearson knew that these accounts belonged to minors, this would not excuse Warren's conduct. Moreover, Applicant has not shown that he was prejudiced. See Gateway Stock and Bond, Inc., 43 S.E.C. 191, 195 (1966) (dismissing allegation that lack of subpoena power denied Applicants due process where no showing of prejudice)
 
 
 [23]
 Article II, Section 7(b) of the NASD Code of Procedure requires Applicants to provide the NASD with a list of all witnesses that will be testifying five business days prior to the hearing
 
 
 [24]
 Furthermore, based upon Applicant's own admissions, it seems unlikely that additional evidence would change our findings. As noted previously, Warren admitted that he signed the new account cards containing inaccurate and incomplete information and accepted discretionary instructions from Whitehill without proper authorization. Even if the branch office had knowledge of the way these accounts were handled, Shearson could not properly supervise the branch office's activities because the new account cards contained false information. And, as noted, any failure by Shearson would not relieve Warren of his responsibility
 
 
 [25]
 In a letter accompanying Warren's brief, Warren seeks a copy "of my SEC file on this case," apparently containing Warren's response to certain 1990 staff inquiries. It is unclear from this request whether Warren seeks to have this information admitted into evidence. Pursuant to Rule 19d-3(e), a party seeking to admit new evidence before the Commission must show that the evidence is material and that there were reasonable grounds for failing to adduce such evidence in the prior proceedings. This information was not referred to or relied on before the NASD and Warren does not suggest that it is material to this case. In light of Rule 19d-3(e), we have not considered any such matter in connection with this proceeding
 
 
 [26]
 Applicant contends that the sanctions imposed on him are not appropriate, since no disciplinary action was brought against his branch manager for signing the same false new account cards that he signed. While the branch manager was at a minimum careless in signing the new account forms, especially the one that indicated one of the children was a minor, that does not negate Warren's responsibility. Warren admits he knew this family, knew for certain that these accounts belonged to minors, knew that Whitehill urgently needed funds, and knew, after reviewing monthly client statements, that the accounts were being consistently depleted. In light of Applicant's conduct with respect to these accounts, we believe these sanctions are appropriate
 
 
 [27]
 In determining if these sanctions are excessive, we have considered the arguments Applicant made below that these violations were isolated, are unlikely to recur, and that Warren did not benefit from the activities in these accounts, other than receiving nominal commissions
 
 
 [28]
 We are modifying the NASD's order to make clear that in the event Warren does not requalify as a general securities representative within 90 days, he may not act in that capacity unless or until he has taken and passed the examination
 
 
 [29]
 All of the contentions of the parties have been considered. They are rejected or sustained to the extent that they are inconsistent or in accord with the views expressed in this opinion